IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE MANUEL PEREZ,

                Plaintiff,                No. CIV S-06-2090 MCE GGH P

      vs.

D.K. SISTO, et al.,               <u>ORDER</u> &

                Defendants.        <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

<u>Introduction</u>

           Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court is a motion to dismiss, filed on 3/04/08 (Docket # 16), brought by defendants Durfey, Flete,[1] Orrick-Schlabes (hereafter, Orrick),[2] Roszko and Sandy, to which plaintiff has filed an opposition.  Not at issue in this motion are plaintiff's claims against defendants Cantu, Cortez and Williams who have previously filed their answer to the amended complaint.  See Answer, filed on 3/04/08 (# 17).  As to defendant Lozano, although a waiver of

---

[1] This name is alternately spelled "Fletes" by defendants' counsel, but there is no express indication as to the correct spelling.

[2] Plaintiff originally identified this defendant as "Orrick" and although defendants' counsel refers to this individual as "Orrick-Schlabes," throughout the motion she is referenced simply as "Orrick."

1  service of process was filed as to this defendant in this court's case docket on February 8, 2008

2  (# 14, p. 17), defendants' counsel has filed neither a motion nor an answer on that individual's

3  behalf.  Therefore, the defendant Lozano must show cause within ten (10) days of the filed date

4  of this order, why he or she should not be found to be in default for failing to comply with the

5  time constraints for filing an answer, pursuant to Fed. R. Civ. P. 4(d)(3).

6  Amended Complaint

7          Court records indicate that plaintiff filed this action on 9/14/06 in the Northern

8  District, from which it was transferred by Order filed in this court on 9/20/06.  Following this

9  court's Order, filed on 4/06/07, dismissing the vast majority of the defendants named in the

10  original complaint, but granting plaintiff leave to amend, plaintiff filed an amended complaint on

11  5/04/07.  The court found that plaintiff had made cognizable claims in the amended complaint as

12  to defendants Lieutenant (Lt.) Lozano; Lt. B.C. Roszko; Lt. Sandy; Sergeant (Sgt.) Orrick; Sgt.

13  Flete; Sgt. Durfey; Sgt. C.L. Williams; Correctional Officer (C/O) Cantu; and C/O Cortez.  See

14  Order, filed on 10/23/07 (# 9).

15          On the evening of 9/02/05, as plaintiff, a Viet Nam vet under psychiatric care who

16  is prescribed medication twice daily to combat serious depression, anxiety and bouts of

17  psychosis, such as hearing voices, was on his way for his routine evening dosage, he was stopped

18  by defendants Orrick and Flete.  Amended Complaint (AC), p. 5.  Defendant Orrick told plaintiff

19  in vulgar terminology to return to his building even though this defendant was aware of

20  plaintiff's medication needs. Id., at 5-6.  An argument ensued with both parties using vulgar

21  language, but plaintiff turned to walk away toward his housing unit.  Id. at 6.  Defendants Orrick

22  and Fleet chased after plaintiff, ordering him to submit to a pat down search, even though no

23  policy precludes plaintiff from getting his meds and in fact it is the practice that the inmates

24  could get their medication before or immediately after their meals.  Id.  Defendant Orrick has a

25  policy of hassling inmates on psych medication for no reason.  Id.  Without the psych meds,

26  plaintiff is sleepless at night and his anxiety rises to the point of his feeling as though he is

2

having a heart attack.  Id.  Plaintiff was handcuffed and escorted to the Center Complex, where plaintiff was placed in a 4x4x8 cage.  Id.  When asked by defendant Sandy what plaintiff had done, defendant Orrick replied, "I don't like being called a fat fucking bitch."  Id.  Plaintiff states that no mention was made of alleged sexual harassment at that point.  Id., at 6-7.

About half an hour later, plaintiff was escorted by defendant Flete to an office where defendants Orrick and Sandy were waiting.  AC, p. 7.  When plaintiff entered, he saw that the contents of his wallet was spread out on the desk and noticed his prison "C" file on the desk where defendant Sandy sat.  Id.  When defendant Sandy yelled: "What the fuck are you looking at her for," as plaintiff looked at defendant Orrick and his wallet contents, he replied that he was wondering what Orrick was looking for, to which defendant Sandy responded: "Anything and everything she could take and I'm going to start with that necklace around your neck."  Id.  When plaintiff explained it was a rosary not a necklace, defendant Sandy, in crude terms, indicated that she did not care and began to mock plaintiff, asking why plaintiff did not get visits and asking if he had family or lady friends, "or do you just like little girls."  Id.  While defendant Sandy told plaintiff to "shut the fuck up," defendant Orrick continued to stand by plaintiff, pointing a can of mace at plaintiff's face.  Id.  When plaintiff was confused by defendant Sandy's question as to where his property was, Sandy became upset, ordering plaintiff back in the cage and directing that a lock-up order be written charging plaintiff with sexual harassment.  Id.  As plaintiff was being led out by defendant Flete, defendant Sandy reached for the rosary, telling plaintiff to take it off, which he could not do with cuffed hands; defendant Flete reached up and ripped it off plaintiff's neck.  Id, at 7-8.

Plaintiff believes that he was subjected to a "trump[ed] up" sexual harassment charge and Sandy's derogatory comments about his lack of visits based on what defendant Sandy found in plaintiff's C-file regarding his commitment offense, and he contends that other inmates might seek to harm an inmate charged with sexually harassing a female guard.  AC, p. 8. Plaintiff states, in addition to having his rosary ripped from his neck, he never received his

1   medication.  Id.

2       After being placed in Ad Seg, plaintiff, on 9/08/05, was seen by the ICC

3   committee, and was released to yard II pending defendant Orrick's approval, without which he

4   would go to yard I.   AC, p. 8.  It took twelve more days for plaintiff to be released to yard II due

5   to defendant Orrick's apparently withholding approval for that period.  Id.  Plaintiff alleges that

6   defendant Orrick deprived him of "his liberty to access to [sic] the main line."  Id.

7       While on yard I, plaintiff, who is from Puerto Rico, was housed with an inmate

8   from Central America who was also classed as "other."  AC, p. 8.  When plaintiff's cellmate was

9   moved on 10/03/05, plaintiff, a 57-year-old with no gang affiliation, learned he was to be housed

10  with a "Northern" inmate in Building 2.  Due to the Northern prison gang inmates' well-known

11  propensity for violence, plaintiff voiced his safety concerns to defendants Durfey and Roszko,

12  who only gave plaintiff the choice of moving in with the Northern inmate or going to Ad Seg.

13  Id., at  9.  Plaintiff chose Ad Seg for safety reasons; he states that he was then placed in Ad Seg

14  for refusing to cell with the inmate.  Id., at 9-10.   Plaintiff states that the cell he was being

15  moved out of was to remain unoccupied for the evening and that inmates are housed according to

16  their affiliation, i.e., a Northern Mexican is not housed with a Southern Mexican; thus, he

17  believes the planned cell assignment amounted to an Eighth Amendment violation for failure to

18  protect.  Id.

19      When on 10/04/05, plaintiff was seen for a 114 hearing to determine whether

20  plaintiff should stay in Ad Seg and go before the ICC committee or be released, Captain

21  Scavetta, not a defendant, determined that plaintiff could be released to yard II.  AC, p. 10.

22  Nevertheless, defendant Flete came to plaintiff's cell in Ad Seg, disputed the captain's authority,

23  and said he would only release plaintiff back to yard 1 to be housed with the Northern inmate,

24  indicating his deliberate indifference to plaintiff's safety.  Id., at 10-11.  As a direct result of

25  being forced to yard I by defendant Flete, plaintiff was ultimately attacked by another inmate and

26  subjected to excessive use of force by two prison guards.  Id., at 11.

From mid-October 2005, until February 2, 2006, plaintiff repeatedly spoke with defendant Williams asking to be housed with another cellmate or be sent to yard II, which pleas she ignored. AC, p. 11. In mid-January of 2006, plaintiff approached the associate warden for yard I and II, Ms. Crawford (not a defendant), explaining that he was being housed with a Northern inmate whose ethnicity had been changed to "other" by custody staff, by whom he meant defendant Williams. Id. The associate warden told plaintiff such a change could not occur without full committee action; when plaintiff and the associate warden were seen talking together by defendant Williams and she was told about the discussion, Williams yelled at plaintiff: "What are you doing going over my head to the A.W. about this bullshit?" Id., at 11-12. When plaintiff gave defendant Williams the name of the cellmate, Duran T-63911, Williams became more upset, saying in a loud voice which other inmates could overhear: "Get out of here and quit dropping peoples names trying to fuck up their program." Id., at 12.

As plaintiff continued to try to be rehoused, on 2/02/06, he approached defendant Williams again, asking that there be a "compaction" of inmates to free up a cell, where there were four cells with one inmate only in each, so that he could be housed with someone like himself who was also designated "other." AC, p. 12. Defendant Williams became upset again, yelling: "So now you want to fuck the blacks out of their cell. Just for you." Id. Plaintiff noticed a number of black inmates looking at him at that point, and, later that day, Inmate Socorro, E-99222, approached him about what he had overheard Williams saying about plaintiff trying to have black inmates moved from their cells, knocked plaintiff down and ran off. Id., at 12-13. Later on, plaintiff was again approached by Inmate Socorro, who had two other inmates with him. Id., at 13. Plaintiff was attacked by the inmates and C/O Henderson (not a defendant) saw what was happening and put the yard down. Id. Plaintiff was taken to medical in handcuffs; plaintiff was reported to have an elbow scrape. Id.

Plaintiff was taken to Center Complex and placed in a 4x4x6 cage and, a few minutes later, escorted to be interviewed by non-defendant Lt. Herrera. AC, p. 13. Defendant

Williams came in and whispered to Herrera, after which Herrera told plaintiff that he had intended to release him back to the yard, but because of defendant Williams' information, plaintiff would be placed in Ad Seg for his safety.  Id.  Plaintiff was placed back in the holding cage still in restraints, which had not been removed.  Id.  After his hands had started to go numb, plaintiff told defendant Cortez of his pain and discomfort but Cortez ignored plaintiff's request to loosen the handcuffs.  Id.  When he could not get anyone to loosen the cuffs, he began to kick his cage, after which a correctional officer returned and removed the too-tight cuffs.  Id., at 13-14.  (Plaintiff does not clearly identify the C/O who removed his cuffs).  When plaintiff asked to be taken to the clinic for a wrist injury from the handcuffs, defendant Cortez ignored plaintiff again.  Id., at 14.

When plaintiff began to kick the holding cage again for attention, defendant Lozano ran in with a can of O.C. spray pointed at plaintiff, threatening to spray him if he did not stop.  AC, p. 14.  Defendant Lozano refused plaintiff's request to be seen by medical to document plaintiff's wrist injury.  Id.  Fifteen minutes later, defendants Cortez and Cantu came and told plaintiff to "cuff up" for an escort to medical.  Id.  Instead, however, they led plaintiff to Ad Seg; when plaintiff stopped to ask why, defendants Cantu and Cortez took him down; plaintiff could not break his fall with his hands cuffed behind him.  Id., at 15.  Plaintiff hit the ground with the force of the two defendants on top of him; his face hit the concrete ground.  Id.  Plaintiff suffered head and knee injuries over and above the previous wrist injury from the cuffs.  Id.  Plaintiff filed a grievance about these officers alleged use of excessive force.  Id.  Plaintiff's placement in Ad Seg on 2/02/06, occurred as a result of the above incident and the alleged mutual combat incident with Inmate Socorro.  Id.  Plaintiff was told by Lt. Herrera on 2/03/06, that the information provided by defendant Williams about plaintiff's safety was not credible.  Id.  Plaintiff was released to yard II on 3/16/06, but maintains that had defendant Flete released him as ordered by Capt. Scavetta, the yard I incident would not have occurred.  Id., at 16.  Plaintiff, a diagnosed mental health patient, states that defendants Orrick and Flete's harrassing behavior,

1   i.e., interfering with his access to his medication has increased his stress, but he does wish to stay

2   at CSP-Solano.   Id.  Plaintiff seeks primarily money damages with limited reference to a form of

3   injunctive relief having to do with constraining the future actions of defendants Orrick and Flete.

4   Id., at 5, 16-17.

5   Motion to Dismiss

6          Defendants bring their motion to dismiss, as previously noted, on behalf of

7   defendants Durfey, Fletes (or Flete), Orrick-Schlabes (Orrick), Roszko, and Sandy; these

8   defendants move for dismissal pursuant to non-enumerated Rule 12(b) of the Federal Rules of

9   Civil Procedure for failure to exhaust administrative remedies and also under Fed. R. Civ. P.

10  12(b)(6), for failure to state a claim upon which relief can be granted.   Notice of Motion to

11  Dismiss (MTD), p. 1.

12          *Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

13          In a motion to dismiss for failure to exhaust administrative remedies under non-

14  enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of

15  raising and proving exhaustion."  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  The

16  parties may go outside the pleadings, submitting affidavits or declarations under penalty of

17  perjury, but plaintiff must be provided with notice of his opportunity to develop a record.  Wyatt

18  v. Terhune, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair notice by its order

19  filed on 11/26/07 (# 11).

20          Should defendants submit declarations and/or other documentation demonstrating

21  an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing.

22  Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the

23  complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to

24  the court's attention those parts of the complaint upon which plaintiff relies.  If the court

25  determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate

26  remedy for non-exhaustion of administrative remedies.  Wyatt v. Terhune, 315 F.3d at 1120.

1       *PLRA Requirements*

2              The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,

3   "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

4   other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

5   such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief

6   must exhaust administrative remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999).  In Booth

7   v. Churner, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that

8   inmates must exhaust administrative remedies, regardless of the relief offered through

9   administrative procedures.  Therefore, inmates seeking money damages must also completely

10  exhaust their administrative remedies.  Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates

11  seeking money damages are required to exhaust administrative remedies even where the

12  grievance process does not permit awards of money damages).  The United States Supreme Court

13  has held that exhaustion of administrative remedies under the PLRA requires that the prisoner

14  complete the administrative review process in accordance with the applicable procedural rules.

15  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006).  Thus, in the context of the applicable

16  PLRA § 1997e(a) exhaustion requirement, any question as to whether a procedural default may

17  be found should a prisoner plaintiff fail to comply with the procedural rules of a prison's

18  grievance system has been resolved: the PLRA exhaustion requirement can only be satisfied by

19  "proper exhaustion of administrative remedies....," which means that a prisoner cannot satisfy the

20  requirement "by filing an untimely or otherwise procedurally defective administrative grievance

21  or appeal."  Woodford v. Ngo, supra, 126 S. Ct. at 2382.  Moreover, 42 U.S.C. § 1997e(a)

22  provides that no action shall be brought with respect to prison conditions *until* such

23  administrative remedies as are available are exhausted.  McKinney v. Carey, 311 F.3d 1198 (9th

24  Cir. 2002).

25  \\\\\

26  \\\\\

8

1        *Administrative Exhaustion Procedure*

2             In order for California prisoners to exhaust administrative remedies, they must

3    proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a

4    CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4)

5    third level appeal to the Director of the California Department of Corrections.  Barry v. Ratelle,

6    985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5).  A final

7    decision from the Director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.

8        *Discussion*

9             Defendants contend that as to plaintiff's claims arising from the events of 9/02/05,

10   plaintiff failed to exhaust his administrative remedies.  MTD, pp. 5-7.   Although defendants

11   purport to submit a declaration in support of their motion from CSP-Solano Inmate Appeals

12   Coordinator, Santos Cervantes, the affidavit contains no declaration that it is signed under

13   penalty of perjury.  See Santos Declaration.  Nevertheless, the factual representation by Santos

14   that the formal level appeal of the events of 9/02/05, was withdrawn by plaintiff on 9/21/05, and

15   the representation that plaintiff failed to appeal the alleged confiscation of his rosary on 9/02/05,

16   is supported by the attached Exhibit A, a copy of plaintiff's appeal, dated 9/06/05, Log No. CSP-

17   S 05-02549, the authenticity of which plaintiff does not dispute.  The appeal includes the words

18   "emergency appeal."  Within the appeal, plaintiff complains of having been placed in Ad Seg by

19   defendant Sandy as a result of plaintiff's argument with defendant Orrick because of her policy

20   of not permitting inmates to receive their medication after the evening meal.  See Exh. A to

21   Santos Dec.  Plaintiff includes within the grievance by way of an attachment essentially the same

22   recitation of events that he contends transpired in his encounter with defendants Sandy, Orrick

23   and Flete before his placement in Ad Seg on 9/02/05 on an allegedly false sexual harassment

24   charge, except that he makes no reference to his rosary having been ripped off his neck.  Id.

25   Plaintiff apparently added an update on 9/06/05 concerning a prison regulation regarding

26   placement in Ad Seg.  In addition, there is an "add on update" dated 9/15/05, wherein plaintiff

9

comments that he was seen by the committee and released to yard II pending Orrick's approval

and that he was served with a Rule 115 Division F offense but remained in Ad Seg at that time.

(It is somewhat confusing that plaintiff has dated the document as submitted on 9/06/05, and

stamped received on 9/12/05, but has a 9/15/05 "add on.")   Within the grievance the action

plaintiff requests is to be seen by a captain or Facility II A.W. "A.S.A.P." and to be released to

the mainline yard II.   On the second page of the grievance, dated as assigned to a reviewer on

9/19/05, completed on 9/21/05 and returned to the inmate on 9/22/05, besides the boxes next to

"granted," "p. granted" and "denied" are unchecked; the box "other" is checked, with the

handwritten word "withdrawn" next to it. Also handwritten on the form are the words: "This 602

is moot right now[.] I've been release [sic] to I yard."   Under these words appear to be plaintiff's

signature.   The staff signatures are virtually illegible.

Defendants contend that plaintiff's having deemed the appeal "moot," and having

withdrawn it, when the relief he sought did not address many of the issues raised in the appeal,

renders the appeal, as to those related claims raised herein, administratively unexhausted.   MTD,

pp. 5-6.   Defendants also point out that plaintiff has filed no grievance at all concerning the

rosary being ripped from him.   Id., at 6.

In opposition, plaintiff claims that he did exhaust the administrative remedies

available to him.   Opposition (Opp.), pp. 3-6.   He points to CAL. CODE REGS. tit.xv, § 3084.5(e),

which states in part that "[f]ormal level appeals shall not be reviewed by a staff person who

participated in the event or decision being appealed...."   Plaintiff contends, in a declaration that is

signed under penalty of perjury, that on 9/21/05, the day after he was released from Ad Seg, he

was escorted to a dimly lit office where defendant Orrick was and that upon entering the office,

he was followed by two additional C/Os.   See Opp., p. 3 & plaintiff's declaration.   As defendant

Orrick pulled out the grievance she mockingly asked plaintiff what the emergency was,

whereupon he told her that he was (at the time he wrote it) being held in Ad Seg weeks after

being released by the ICC on 9/08/05.   When she noted he had since been released and thus the

1   appeal had been granted and that he should withdraw it, he resisted, telling her that he would not

2   do so.  See plaintiff's dec.  She then told him it would be in his "best interest" to withdraw the

3   appeal, after which plaintiff looked around the room, remembering the previous time he had been

4   surrounded by three correctional officers, and feeling the environment to be hostile and

5   intimidating.  Plaintiff said nevertheless that while he would not withdraw the appeal, since he

6   had been released, he would state that the appeal was moot.  Id.  He therefore believed that his

7   appeal was exhausted.  Id.  Plaintiff also declared that he felt pressure on a later occasion, on

8   10/17/05, when defendants Flete and Orrick tried to place him in a similar position, but on that

9   occasion, plaintiff would not enter the room with them.  Id.  He claims that having been

10   previously tricked into dropping his appeal a month earlier, he would not do so again.

11          In his opposition, plaintiff also contends that the word "withdrawn" on the

12   grievance is not in his handwriting.  Opp., p. 4.  Unlike the court, plaintiff evidently is able to

13   identify the staff signature on the grievance as that of Lt. Spoon (not a defendant), by whom

14   plaintiff states he was never interviewed.

15          There are several troubling issues raised by plaintiff's opposition and defendants

16   do not counter them in any reply.  To the extent that the issues raised by plaintiff in the subject

17   grievance were deemed to have been under the first formal level review, under CAL. CODE REGS.

18   tit.xv, § 3084.5(e), as plaintiff notes, prison regulations properly applied may have required that

19   defendant Orrick not be reviewing or processing the appeal.  As well, plaintiff is likely to have

20   felt intimidated by the encounter with Orrick and the other officers; however, the fact remains

21   that plaintiff had actually received the relief he requested in the grievance and he did concede at

22   least as to that extent the grievance was moot.  Although plaintiff raised a number of other issues,

23   such as the purported policy by defendant Orrick of keeping inmates from obtaining their

24   evening medication or the claims about defendant Sandy's conduct, plaintiff's requested relief

25   was simply to be removed from Ad Seg.  By not setting forth the action he sought with regard to

26   the other claims, in essence, it appears that plaintiff had abandoned them and, indeed, did not

1   seek administrative exhaustion on these claims and deprived the facility of addressing them.

2   Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378.  Nor does plaintiff set forth any efforts he made

3   to revive his grievance after having conceded that his appeal was moot.  The court finds that

4   plaintiff's claims regarding the events of September 2, 2005, involving defendants Orrick, Flete

5   and Sandy should be dismissed for plaintiff's failure to exhaust them administratively.

6       *Legal Standard Under Fed. R. Civ. P. 12(b)(6)*

7           In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

8   a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

9   it must contain factual allegations sufficient to "raise a right to relief above the speculative

10  level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "The

11  pleading must contain something more...than...a statement of facts that merely creates a suspicion

12  [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice

13  and Procedure § 1216, pp. 235-236 (3d ed. 2004).

14          In considering a motion to dismiss, the court must accept as true the allegations of

15  the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

16  Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

17  motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

18  89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume

19  that general allegations embrace those specific facts that are necessary to support the claim.'"

20  National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803

21  (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

22  Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

23  Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

24          The court may consider facts established by exhibits attached to the complaint.

25  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

26  consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other

papers filed with the court, <u>Mack v. South Bay Beer Distributors</u>, 798 F.2d 1279, 1282 (9th Cir.

1986).  The court need not accept legal conclusions "cast in the form of factual allegations."

<u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an

opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  <u>See</u>

<u>Noll v. Carlson</u>, 809 F. 2d 1446, 1448 (9th Cir. 1987).

*Discussion*

Defendants contend that plaintiff has failed to state a cause of action with regard

to defendants Durfey, Roszko and Flete for failing to protect him with respect to the attack by

Inmate Socorro.  MTD, p. 7.  They contend that the lapse of time from October, 2005, until

plaintiff's February, 2006, confrontation with defendant Williams whose yelling about plaintiff's

efforts to deprive African American of their cells, according to plaintiff, led to the attack by

Socorro, was too great for there to have been any causal connection between the actions (or

inactions) of Durfey and Roszko.  Id.   Similarly, counsel's argument on behalf of defendant

Flete is that Flete's failure to release him from Ad Seg in mid-October 2005, until he agreed to

cell with someone to whom plaintiff objected, is also too attenuated from what occurred

allegedly due to defendant Williams' actions in February, 2006, to state a cause of action against

Flete.  Id., at 7-8.

Plaintiff contends that the cell move which would have placed him with a

Northern inmate, on 10/03/05, was not an emergency and of itself constituted an Eighth

Amendment violation.  Opp., pp. 6-7.  As to defendants Durfey and Roszko, plaintiff's claim that

they violated the Eighth Amendment by the proposed cell move itself fails for a number of

reasons.

"'[P]rison officials have a duty...to protect prisoners from violence at the hands of

other prisoners.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976 (1994).  "[A]

1   prison official violates the Eighth Amendment when two requirements are met.  First, the

2   deprivation alleged must be, objectively, 'sufficiently serious'....  For a claim (like the one here)

3   based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions

4   posing a substantial risk of serious harm."  Id. at 834, 114 S.Ct. at 1977.  Second, "[t]o violate

5   the Cruel and Unusual Punishments Clause, a prison officials must have a 'sufficiently culpable

6   state of mind' ... [T]hat state of mind is one of 'deliberate indifference' to inmate health or

7   safety."  Id.  The prison official will be liable only if "the official knows of and disregards an

8   excessive risk to inmate health and safety; the officials must both be aware of facts from which

9   the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

10  the inference." Id. at 837, 114 S.Ct. at 1979.

11          In essence plaintiff contends that defendants Durfey and Roszko would have

12  placed him at risk by placing him with a Northern inmate cellmate.  However, as defendants

13  Durfey and Rozko placed plaintiff in Ad Seg, when plaintiff was given a choice, rather than with

14  the inmate to whom he objected, such a putative risk never came to pass with respect to these

15  defendants.   To the extent that plaintiff argues that defendants Durfey and Roszko, by their

16  actions in October, 2005, are responsible for the harm to which he was allegedly subjected some

17  months later (in February, 2006), this claim is too tenuous to show an Eighth Amendment

18  violation.  Following his placement in Ad Seg due to his fear of being housed with a Northern

19  Mexican cellmate, plaintiff avers that it had subsequently been recommended that plaintiff be

20  released from his Ad Seg placement to yard II, but defendant Flete refused, confining him to yard

21  1, where, eventually, plaintiff was attacked by another inmate, but notably not the individual that

22  he allegedly actually feared.  As defendants contend, under 42 U.S.C. § 1983, plaintiff must do

23  more than set forth a mere sequence of events connecting Durfey's and Roszko's requiring

24  plaintiff to house with a Northern Mexican inmate to Inmate Socorro's assault four months later.

25  MTD, p. 7, citing Arnold v. International Business Machines Corp., 637 F.2d 1350, 1355 (9th Cir.

26  1991) ("Liability under section 1983 can be established by showing that the defendant personally

14

1  participated in a deprivation of the plaintiff's rights, or caused such a deprivation to occur").  By

2  the Durfey's and Roszko's act of assigning a Northern Mexican inmate as a cellmate for plaintiff,

3  and having plaintiff placed in Ad Seg based on plaintiff's own choice to do so rather than take

4  the cellmate, plaintiff cannot link a later attack months later by an inmate unrelated to the

5  cellmate to whom plaintiff objected, particularly after plaintiff had since been moved out of the

6  Ad Seg placement, and since it was the cellmate assignment itself which forms the basis of the

7  claim.

8         While defendant Flete's confining plaintiff to yard 1, where he was compelled to

9  be housed with a Northern Mexican inmate, whom he evidently feared and away from whom he

10  sought to be moved, comes closer to the time within which plaintiff was attacked by an inmate,[3]

11  and although plaintiff argues that a chain of events precipitated by these three defendants caused

12  the incident in which he was attacked, defendants are correct that the link between what actually

13  happened to injure plaintiff is not sufficiently linked to the conduct of defendants Durfey, Roszko

14  and Flete.  The inmate who attacked plaintiff did so, by plaintiff's allegations primarily, as a

15  result of the conduct of an already answering defendant, Williams.   Plaintiff's Eighth

16  Amendment claims against defendants Durfey, Roszko and Flete should be dismissed.

17         Defendants also argue that plaintiff has failed to state a cause of action

18  against defendants Durfey, Roszko and Flete for having placed him in Ad Seg in violation of his

19  due process rights.  MTD, pp. 8-9.  As to defendants Durfey and Roszko, defendants maintain

20  that plaintiff chose to go to Ad Seg rather than occupy a cell with a prisoner to whom he

21  objected.  Id., at 9.  As to defendant Flete, according to defendants' counsel, the claim is not that

22  defendant Flete assigned plaintiff to Ad Seg, but only that Flete would not release him until

23  plaintiff agreed to share a cell with an inmate plaintiff found objectionable.  Id.

24

25         [3]  Plaintiff never states that the Northern inmate with whom he was housed and for which
26  he seeks to implicate defendants for assigning as his cellmate ever threatened or harmed him in any
   way.

1    Plaintiff does not appear to be alleging a deprivation of due process by defendants

2  Durfey and Roszko, by placing him in Ad Seg, as plaintiff elected that option when he appealed

3  to Durfey and Roszko objecting to placement with the Northern inmate.  To the extent plaintiff

4  might intend to allege a Fourteenth Amendment due process violation by the Ad Seg placement

5  by defendants Durfey and Roszko, plaintiff's allegations fail to state a claim.

6    In the first place, as noted, while plaintiff may not have appreciated the

7  alternatives he was permitted, plaintiff himself chose Ad Seg because he believed he would be at

8  risk with the Northern cellmate.  Moreover, the mere assignment of a prisoner to administrative

9  segregation is not enough to implicate due process.

> [W]e recognize that States may under certain circumstances create
> liberty interests which are protected by the Due Process Clause.
> See also <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 107 S.Ct. 2415,
> 96 L.Ed.2d 303 (1987). But these interests will be generally limited
> to freedom from restraint which, while not exceeding the sentence
> in such an unexpected manner as to give rise to protection by the
> Due Process Clause of its own force, see, e.g., <u>Vitek v. Jones</u>, 445
> U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental
> hospital), and <u>Washington</u>, 494 U.S. 210, 221- 222, 110 S.Ct.
> 1028, 1036-1037 (involuntary administration of psychotropic
> drugs), nonetheless imposes atypical and significant hardship on
> the inmate in relation to the ordinary incidents of prison life.

17  <u>Sandin v. Conner</u>, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).

18    Plaintiff did not allege any particular condition in his Ad Seg placement by

19  defendants Durfey and Roszko which the law would determine to be atypical and harsh in the

20  <u>Sandin</u> context.  For this reason alone, the plaintiff fails to allege a due process violation.   In

21  addition, to the extent that plaintiff intends to claim a due process violation by defendant Orrick's

22  having allegedly withheld her approval for plaintiff to be released from Ad Seg for an additional

23  twelve days after the ICC committee apparently approved his release to yard II, pending her

24  approval, such a claim fails as well.  Plaintiff complains that Orrick thereby deprived him of "his

25  liberty to access" the main line; however, merely being held in Ad Seg for an additional twelve

26  days, without some allegation of an atypical and significant hardship suffered thereby, and

16

1  particularly in light of plaintiff's own allegation that he was to be released only upon defendant

2  Orrick's approval and had not been simply released by the ICC in an action that was thereafter

3  arbitrarily countermanded by Orrick.   These due process claims should be dismissed.

4  Nor are plaintiff's rights to due process implicated by his being placed with a cellmate.  In

5  general, prison officials' housing and classification decisions do not give rise to federal

6  constitutional claims encompassed by the protection of liberty and property guaranteed by the

7  Fifth and Fourteenth Amendments.  See Board of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct.

8  2701 (1972).

9          Accordingly, IT IS ORDERED that defendant Lozano show cause, within ten (10)

10  days of the filed date of this order, why this defendant should not be found to be in default in this

11  case.

12          IT IS RECOMMENDED that the motion to dismiss, filed on 3/04/08 (# 16), by

13  defendants Durfey, Flete, Orrick, Roszko, and Sandy be granted, and this case proceed only as to

14  the defendants who have previously answered.

15          These findings and recommendations are submitted to the United States District

16  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

17  days after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20  shall be served and filed within ten days after service of the objections.  The parties are advised

21  that failure to file objections within the specified time may waive the right to appeal the District

22  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23  DATED: 01/07/09

24                                      /s/ Gregory G. Hollows

25                                      GREGORY G. HOLLOWS
                                        UNITED STATES MAGISTRATE JUDGE

GGH:009
26  pere2090.mtd